1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                        DISTRICT OF OREGON

9                        PORTLAND DIVISION

10

11

12   COMPLETE DISTRIBUTION SERVICES,          No. 3:13-cv-00800-HU
     INC., an Oregon corporation,
13                                            **FINDINGS AND**
              Plaintiff,                      **RECOMMENDATION**
14
          v.
15
     ALL STATES TRANSPORT, LLC, an
16   Oregon limited liability company,

17            Defendant.
     ─────────────────────────────
18

19   John A. Anderson
     Kevin M. Anderson
20   Anderson & Yamada, P.C.
     9755 SW Barnes Road, Suite 675
21   Portland, OR 97225
     Telephone: (503) 227-4586
22   Facsimile: (503) 227-7044

23        Attorneys for Plaintiff

24   Flavio A. Ortiz
     Martin M. Rall
25   Lachenmeier Enloe Rall & Heinson
     9600 SW Capitol Highway, Suite 200
26   Portland, OR 97219
     Telephone: (503) 768-9600
27   Facsimile: (503) 768-9133

28        Attorneys for Defendant

Page 1 - FINDINGS AND RECOMMENDATION

1  HUBEL, Magistrate Judge:

2   Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6)

3  and Rule 12(f), Plaintiff Complete Distribution Services, Inc.

4  ("Plaintiff") moves to dismiss Defendant All States Transport,

5  LLC's ("Defendant") counterclaim for negligence and to strike

6  certain affirmative defenses set forth in Defendant's answer.[1]  For

7  the reasons that follow, Plaintiff's motion (Docket No. 46) to

8  dismiss Defendant's counterclaim for negligence and to strike

9  certain affirmative defenses should be granted in part and denied

10 in part.

11 **I. FACTS AND PROCEDURAL HISTORY**

12  Both Plaintiff and Defendant are Oregon corporations that hold

13 all the authorizations necessary from the Federal Motor Carrier

14 Safety Administration ("FMSCA") to serve as a freight

15 transportation broker and interstate motor carrier, respectively.[2]

16 On December 4, 2012, Pacific Nutritional, Inc. (hereinafter, "the

17 Shipper" or "PNI") asked Plaintiff to arrange for the

18 transportation of two shipments of vitamins and nutritional

19 supplements.  The shipments were to be transported from the

20 Shipper's facility in Vancouver, Washington, to two separate

21 locations in Florida—namely, Tampa Bay and Clearwater.  Plaintiff

22 prepared and issued two load confirmation contracts which were

23 ────────────

24  [1] On May 8, 2014, Defendant refiled its answer because the
25 previously filed answer had not been signed in accordance with Rule
   11.  *See* FED. R. CIV. P. 11(a)(stating that "[e]very pleading,
   written motion, and other paper must be signed by at least one
26 attorney of record in the attorney's name").

27  [2] "Both freight brokers and motor carriers must be registered
28 and licensed by the [FMCSA]." *Pittsburgh Logistics Sys., Inc. v.*
   *C.R. England, Inc.*, 669 F. Supp. 2d 613, 615 (W.D. Pa. 2009).

Page 2 - FINDINGS AND RECOMMENDATION

signed by Defendant that same day.  The load confirmation contracts
stated that Defendant agreed to indemnify Plaintiff for all losses
or damages arising from Defendant's transportation services.

Three days later, on December 7, 2012, Defendant picked up the
shipments in separate trailers from the Shipper's facility in
Vancouver, and signed the bills of lading.  Unbeknownst to
Plaintiff, and contrary to the instructions given to Defendant by
Plaintiff, Defendant combined the two shipments into a single
trailer for the purposes of transporting them to Florida.  The next
day, December 8, 2012, Defendant's semi-tractor trailer was
involved in an accident on Interstate 84 in eastern Oregon,
resulting in loss and damage to the shipments.  The Shipper filed
cargo loss and damage claims with Plaintiff totaling $169,844.47,
which Plaintiff forwarded to Defendant and its cargo insurance
carrier, Certain Underwriters at Lloyds of London (hereinafter,
"the Insurer").

For the sake of its business relationship with the Shipper,
Plaintiff voluntarily reimbursed the Shipper for its entire cargo
loss and damage claims, and in return, the Shipper tendered a full
and complete release to Plaintiff as well as an assignment of its
claims.  Although it has yet to receive any payment, Plaintiff
tendered a full release to the Insurer in exchange for partial
payment in the amount of $88,392.50.  It is Plaintiff's position
that Defendant is liable for the remaining $81,451.50, or
alternatively, for $169,844.47 in the event the Insurer fails to
make the agreed-upon payment.

On the basis of the foregoing, Plaintiff filed the present
action against Defendant on May 13, 2013, alleging a claim for

Page 3 - FINDINGS AND RECOMMENDATION

1   violation of the Carmack Amendment, 49 U.S.C. § 14706, a claim for
2   setoff, and breach of contract.  After Defendant failed to plead or
3   otherwise defend, the Court granted Plaintiff's motion for entry of
4   default on June 10, 2013.   Shortly thereafter, Defendant filed a
5   motion to set aside the entry of default, which was ultimately
6   granted by the Court on August 7, 2013.

7   By way of an amended complaint filed on January 23, 2014,
8   Plaintiff added an additional claim for breach of contract against
9   Defendant based on eighty-nine other instances where Defendant
10  collected excessive freight charges after combining shipments in
11  violation of load confirmation contracts with Plaintiff.   After
12  Defendant filed an answer, affirmative defenses and counterclaims
13  on February 10, 2014, Plaintiff filed the motion to dismiss
14  Defendant's negligence counterclaim and to strike certain
15  affirmative defenses.

16  **II. LEGAL STANDARD**

17  **A.   Motion to Dismiss**

18  A court may dismiss a complaint for failure to state a claim
19  upon which relief can be granted pursuant to Rule 12(b)(6).   In
20  considering a Rule 12(b)(6) motion to dismiss, the court must
21  accept all of the claimant's material factual allegations as true
22  and view all facts in the light most favorable to the claimant.
23  *Reynolds v. Giusto*, No. 08-CV-6261, 2009 WL 2523727, at *1 (D. Or.
24  Aug. 18, 2009).   The Supreme Court addressed the proper pleading
25  standard under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550
26  U.S. 544 (2007).   *Twombly* established the need to include facts
27  sufficient in the pleadings to give proper notice of the claim and
28  its basis: "While a complaint attacked [under] Rule 12(b)(6) . . .

Page 4 - FINDINGS AND RECOMMENDATION

1  does not need detailed factual allegations, a plaintiff's
2  obligation to provide the grounds of his entitlement to relief
3  requires more than labels and conclusions, and a formulaic
4  recitation of the elements of a cause of action will not do." *Id*.
5  at 555 (brackets omitted).

6      Since *Twombly*, the Supreme Court has clarified that the
7  pleading standard announced therein is generally applicable to
8  cases governed by the Rules, not only to those cases involving
9  antitrust allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.
10 1937, 1949 (2009). The *Iqbal* court explained that *Twombly* was
11 guided by two specific principles. First, although the court must
12 accept as true all facts asserted in a pleading, it need not accept
13 as true any legal conclusion set forth in a pleading. *Id*. Second,
14 the complaint must set forth facts supporting a plausible claim for
15 relief and not merely a possible claim for relief. *Id*. The court
16 instructed that "[d]etermining whether a complaint states a
17 plausible claim for relief will . . . be a context-specific task
18 that requires the reviewing court to draw on its judicial
19 experience and common sense." *Iqbal*, 129 S. Ct. at 1949-50 (citing
20 *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). The court
21 concluded: "While legal conclusions can provide the framework of a
22 complaint, they must be supported by factual allegations. When
23 there are well-pleaded factual allegations, a court should assume
24 their veracity and then determine whether they plausibly give rise
25 to an entitlement to relief." *Id*. at 1950.

26     The Ninth Circuit further explained the *Twombly-Iqbal* standard
27 in *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009). The
28 *Moss* court reaffirmed the *Iqbal* holding that a "claim has facial

Page 5 - FINDINGS AND RECOMMENDATION

1    plausibility when the plaintiff pleads factual content that allows

2    the court to draw the reasonable inference that the defendant is

3    liable for the misconduct alleged." *Moss*, 572 F.3d at 969 (quoting

4    *Iqbal*, 129 S. Ct. at 1949).   The court in *Moss* concluded by

5    stating: "In sum, for a complaint to survive a motion to dismiss,

6    the non-conclusory factual content, and reasonable inference from

7    that content must be plausibly suggestive of a claim entitling the

8    plaintiff to relief." *Moss*, 572 F.3d at 969; *see also Brown v. W.

9    Valley Envtl. Servs. LLC*, Civ. No. 10-210A, 2010 WL 3369604, at *6

10   (W.D.N.Y. Aug. 24, 2010) (noting that the facial plausibility

11   standard "applies to Answers and to counterclaims asserted

12   therein.").

13   **B.   Motion to Strike**

14   Rule 12(f) provides that "[t]he court may strike from a

15   pleading an insufficient defense or any redundant, immaterial,

16   impertinent or scandalous matter" on their own initiative or

17   pursuant to a party's motion.   Fᴇᴅ. R. Cɪᴠ. P. 12(f).   Granting a

18   motion to strike is within the discretion of the district court.

19   *See Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244

20   (9th Cir. 1990).   But motions to strike are disfavored and should

21   not be granted unless it "can be shown that no evidence in support

22   of the allegation would be admissible." *Pease & Curren Ref., Inc.

23   v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990)

24   (internal quotation marks omitted), *abrogated on other grounds by

25   Stanton Rd. Ass'n v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).

26   ///

27   ///

28   ///

Page 6 - FINDINGS AND RECOMMENDATION

1

### III. PRELIMINARY PROCEDURAL MATTERS

2    As discussed above, the Court granted Defendant's motion to

3  set aside an entry of default on August 7, 2013.  Attached to one

4  of the declarations filed in support of Defendant's motion to set

5  aside the entry of default was a "Transportation Contract" entered

6  into by Plaintiff and Defendant on November 29, 2010, which states,

7  among other things:

8                      I. SCOPE OF THE CONTRACT

9        CARRIER and BROKER agree that this CONTRACT shall
   govern any and all shipments tendered to CARRIER for
10   transportation by BROKER (or upon BROKER'S instructions
   by its shipper customers) during the term of this
11   CONTRACT whether regulated or unregulated commodities in
   intra- or inter-state transportation. . . .
12
   VII. PROVISIONS AS TO THE SETTLEMENT OF CARGO CLAIMS
13                     AND OTHER DISPUTES

14        . . . .

15   (b) If any dispute arises about any matter covered by the
   terms of this Transportation Contract, the dispute must
16   be submitted, by the party who alleges a violation filing
   a complaint with the Surface Transportation Board
17   (STB). . . .

18        No court action can be taken by either party prior
   to the decision of the STB, and the decision of the STB
19   shall be a binding, final and non appealable decision. If
   for any reason the STB refuses to make a ruling on the
20   subject matter of the complaint, then the parties'
   recourse shall be to the judicial system, either state or
21   federal.

22  (Maftey Decl. [Docket No. 13] Ex. 5 at 3.)

23    Defendant appears to reference the Transportation Contract in

24  paragraph thirty-two of its answer, affirmative defenses and

25  counterclaims by stating: "[P]laintiff has failed to perform all

26  conditions precedent required for its claims and/or required under

27  the applicable contract, including, but not limited to, submitting

28  its claims to the Surface Transportation Board." (Corrected Answer

Page 7 - FINDINGS AND RECOMMENDATION

[Docket No. 59] ¶ 32.)  Defendant refers to this allegation as its "Failure to Perform Condition Precedent" affirmative defense.

When Plaintiff's counsel filed the pending motion to dismiss and to strike, he filed a declaration and attached four exhibits (some of which concern the Transportation Contract in varying degrees).[3]  Exhibit A is a letter Plaintiff's counsel sent to the STB's general counsel, Raymond Atkins, on August 9, 2013, "[t]o confirm [his] belief that the STB would not accept or decide the dispute between" Plaintiff and Defendant.  (Anderson Decl. [Docket No. 47] ¶ 6.)  Plaintiff's counsel's letter describes the nature of this lawsuit and quotes the language above from section VII of the Transportation Contract.

Exhibit B is the response letter STB's deputy director, Thomas Brugman, sent to Plaintiff's counsel on August 13, 2013.  The response letter provides, in pertinent part:

> You seek confirmation that the [STB] does not enforce the Carmack Amendment and therefore 'will not accept or decide a loss and damage dispute between a broker and a motor carrier.'
>
> As a general matter, you are correct: the [STB] does not entertain claims for loss and damage.  *See, e.g.*, 49 U.S.C. § 11706 (civil action to recover loss and damage to be brought in specified courts); *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433, 2445–46 (2010) (discussion of the venue provisions of the Carmack Amendment for rail shipments); *Amend the Uniform Straight Bill of Lading and Accompanying Contract Terms and Conditions*), No. ISM 35002 (STB served Aug. 4, 1998), slip op. at 2 ('[D]isputes regarding motor carrier liability for loss and damage and the enforcement of incorporated

---

[3] According to Plaintiff's counsel, Defendant's motion to set aside the entry of default put him on notice that Defendant "intended to raise as a defense the provision in the November 2010 contract between [Plaintiff] and [Defendant] that required the dispute first be submitted to the [STB] . . . ." (Anderson Decl. ¶ 5.)

Page 8 - FINDINGS AND RECOMMENDATION

provisions must be resolved by the courts.'). Accordingly, the [STB] would not be the proper venue for addressing such a claim.

    I hope this information is helpful. Please note that the opinion provided by this office is merely advisory and in no way binding on the [STB], as formal opinions of the [STB] may only be obtained via a formal proceeding.

(Anderson Decl. Ex. B at 1) (brackets omitted).

Exhibit C to Plaintiff's counsel's declaration is a copy of the August 4, 1998 decision cited above in the deputy director's response letter. And lastly, Exhibit D is a copy of a declaration Defendant filed on July 30, 2013, in support of its motion to set aside the entry of default. That declaration was provided by Dorel Maftey ("Maftey"), the brother of Defendant's managing member, who also "help[s] manage [Defendant]'s business operations." (Maftey Supp. Decl. [Docket No. 22] ¶ 1-2.) As emphasized by Plaintiff's counsel, Maftey acknowledges in his declaration that Defendant's "truck had lost control on I-84 in eastern Oregon in icy/snowy conditions and was then struck by a FedEx truck." (Maftey Supp. Decl. ¶ 7.)

After the Court noted during oral argument that Plaintiff's counsel had presented materials outside of the pleadings without requesting that the Court take judicial notice or presenting any argument as to why it would be proper to do so,[4] Plaintiff's

---

[4] *See generally Peace Software, Inc. v. Hawaiian Elec. Co.*, *Inc.*, No. 09-00408, 2009 WL 3923350, at *3 (D. Haw. Nov. 17, 2009) ("Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed."); *Pelayo v. Nestle USA, Inc.*, No. CV 13-5213-JFW, --- F.3d ---, 2013 WL 5764644, at *2 (C.D. Cal. Oct. 25, 2013) (district court may not consider any material beyond the pleadings in ruling on Rule 12(b)(6) motion to dismiss, although it may consider matters that are properly submitted as part of the

1  counsel addressed the matter in a supplemental memorandum, the sole

2  focus of which is the deputy director's August 13, 2013 response

3  letter.  Plaintiff's counsel argues that

> [t]he Court is entitled to take judicial notice of the
> letter because it accurately and readily determined the
> fact that filing with the STB would be futile based on
> sources whose accuracy cannot reasonably be questioned,
> specifically the cited federal statute[], a cited Supreme
> Court decision, and a cited and published STB decision.
>
> Since the issue concerning the STB arises from a
> condition precedent contained in a contract between
> [Plaintiff] and [Defendant] that purportedly requires
> that any freight loss and damage dispute first be
> submitted to the STB, the condition constitutes an
> adjudicative fact personal to this case. Specifically,
> the Court must determine whether the condition precedent
> is valid, thereby requiring the parties to follow a
> procedural path that will go nowhere and accomplish
> nothing except further delay a resolution of this case at
> substantial expense to the parties . . . .
>
> However, even if the letter cannot be judicial
> noticed (which [Plaintiff] does not concede), there
> remains the statute[] and cases cited that provide an
> authoritative basis for this Court to conclude that the
> condition precedent requiring that this case be submitted
> to the STB is null and void. . . .

17  (Pl.'s Mem. Judicial Notice [Docket No. 60] at 3.)[5]

18  As an initial matter, the Court will not take notice of

19  Exhibit A, Plaintiff's counsel's letter, as it is not properly

20  before the Court, nor does it appear to be the proper subject of

21  judicial notice.  The Court will take notice of Exhibits C and D

22  (the STB's decision and Maftey's supplemental declaration,

23  respectively) since court filings and matters of public record are

24

25  _____

    complaint and/or matters that may be judicially noticed).

26
27  [5] It is well settled that courts are permitted to take
    judicial notice of a fact that "can be accurately and readily
    determined from sources whose accuracy cannot reasonably be
28  questioned." FED. R. EVID. 201(b)(2).

Page 10 - FINDINGS AND RECOMMENDATION

1   the proper subject of judicial notice. *See Reyn's Pasta Bella, LLC*

2   *v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding

3   that judicial notice of court filings and other matters of public

4   record is proper); *see also Yreka W. R. Co. v. Taveras*, Civ. No.

5   2:11–1868, 2012 WL 2116500, at *2 (E.D. Cal. June 4, 2012) ("[T]o

6   the extent that the parties request that the court take judicial

7   notice of the existence of the filings before the STB and its

8   decisions, the request is granted.").

9        As to Exhibit B, the response letter sent by the deputy

10  director of the STB, the Court declines Plaintiff's counsel's

11  request to take judicial notice because the letter is not the

12  proper subject of judicial notice under Federal Rule of Evidence

13  201(b)(2).[6]  While Plaintiff's counsel contends that the response

14  letter "accurately and readily determined the fact that filing with

15  the STB would be futile," the deputy director specifically states

16  that the letter is "merely advisory and in no way binding on the

17  [STB], as formal opinions of the [STB] may only be obtained via a

18  formal proceeding."  As such, there is no way this Court could

19  conclude that the deputy director's response letter establishes the

20  futility of filing with the STB.

21        Nor could the letter serve as a basis for the Court to grant

22  Plaintiff's motion to strike Defendant's "Failure to Perform

23  Condition Precedent" affirmative defense. *See Gamez v. Gonzalez*,

24  No. 1:08–cv–01113, 2014 WL 1847515, at *1 (E.D. Cal. May 8, 2014)

25  ("To prevail on a motion to strike an affirmative defense, the

26

27        [6] Instead of taking judicial notice of the response letter,
    the Court will simply consider the authorities cited therein to the
28  extent Plaintiff relies on them in its moving papers.

Page 11 - FINDINGS AND RECOMMENDATION

moving party must persuade the court that there are no disputed questions of fact or law and that the defense could not succeed under any set of circumstances.  Even when the defense under attack presents a purely legal question, courts are reluctant to determine disputed or substantial questions of law on a motion to strike.") (citations omitted).

## IV. DISCUSSION

### A.   General Principles of the Carmack Amendment

"The Carmack Amendment to the Interstate Commerce Act was enacted in 1906 to relieve the inconsistent outcomes caused by a patchwork of state laws governing a carrier's liability for damage to goods in interstate carriage." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l, LLC*, 632 F.3d 1056, 1061 (9th Cir. 2011).  The statute is the "exclusive cause of action for interstate shipping contract claims, and it completely preempts state law claims alleging delay, loss, failure to deliver and damage to property." *White v. Mayflower Transit, LLC*, 543 F.3d 581, 584 (9th Cir. 2008). Generally, "[l]iability attaches unless the carrier can establish one of several affirmative defenses; for example, by showing that the damage was the fault of the shipper or caused by an Act of God." *Windows, Inc. v. Jordan Panel Sys. Corp.*, 177 F.3d 114, 118 (2d Cir. 1999) (citation omitted).

While the Carmack Amendment serves to secure the rights of shippers, the statute also "applies when a broker or other party steps into the shoes of a shipper and asserts a claim for damages pursuant to a bill of lading for the transportation of goods." *Propak Logistics, Inc. v. Landstar Ranger, Inc.*, 2012 WL 1068118, at *3 (W.D. Ark. Mar. 29, 2012); *Pyramid Transp., Inc. v. Greatwide*

Page 12 - FINDINGS AND RECOMMENDATION

*Dallas Mavis, LLC*, No. 3:12–CV–0149–D, 2013 WL 840664, at *4 (N.D. Tex. Mar. 7, 2013)("allowing broker to maintain Carmack Amendment suit where shipper assigned broker its rights" (citing *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 694 (7th Cir. 2008))); *Transcorr Nat'l Logistics, LLC v. Chaler Corp.*, No. 1:08-cv-00375, 2008 WL 5272895, at *4 (S.D. Ind. Dec.19, 2008) ("It is possible that a broker might bring a claim against a carrier under the Carmack Amendment on behalf of the shipper under a bill of lading, such as by subrogation.").

However, "claims based on separate contractual obligations between brokers and carriers—unrelated to the bills of lading or claims for damage to goods due to a carrier's negligent transport—will survive [Carmack Amendment] preemption." *Propak*, 2012 WL 1068118, at *2; *see also UPS Supply Chain Solutions, Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1294 n.12 (11th Cir. 2014) ("While no federal appellate decision has addressed this issue, several courts have held that indemnity contracts between brokers and carriers are not preempted by the Carmack Amendment."); *InTransit, Inc. v. Excel N. Am. Road Transport, Inc.*, 426 F. Supp. 2d 1136, 1041 (D. Or. 2006) (holding that the plaintiff-broker's claim against the defendant-carrier survived Carmack Amendment preemption based on direct contractual indemnity under a brokerage agreement, as opposed to an assignment of the shipper's rights under the bill of lading).

The Carmack Amendment defines a "carrier" as "a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). A "motor carrier" is defined as "a person providing commercial motor vehicle . . . transportation for compensation." *Id.* §

Page 13 - FINDINGS AND RECOMMENDATION

13102(14).  A "broker," on the other hand, is defined as "a person . . . that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." *Id.* § 13102(2). And an "individual shipper" is defined as any person who, among other things, "is identified as the shipper, consignor, or consignee on the face of the bill of lading . . . [or] owns the goods being transported." *Id.*

There is no dispute in this case that Plaintiff is a broker and Defendant is a motor carrier.  Likewise, there is no dispute that PNI is a shipper.  That much is confirmed by Plaintiff's amended complaint and Defendant's answer, affirmative defenses and counterclaims.

**B.    Negligence Counterclaim and Affirmative Defense**

Plaintiff first moves to strike Defendant's affirmative defense of negligence on grounds that (1) it is preempted by the Carmack Amendment, and (2) Defendant cannot establish that it was "free from negligence."  Defendant asserts that its affirmative defense of negligence "is not governed or preempted by the Carmack Amendment and [Defendant] is not required to assert one of the traditional defenses that a motor carrier would assert to a shipper making a Carmack Amendment claim" because Defendant "is raising [Plaintiff]'s negligence as a broker," not a shipper.  (Def.'s Resp. Mem. at 5.)  Defendant also asserts that "it has not admitted that it was [at] fault for the collision in question, rather it has indicated that the collision occurred after [one of Defendant's]

Page 14 - FINDINGS AND RECOMMENDATION

truck[s] lost control in icy/snowy conditions and was then struck by a FedEx truck." (Def.'s Resp. Mem. at 5-6.)

Defendant's affirmative defense of negligence is predicated on its contention that Plaintiff had a duty to determine the value of the shipments it had arranged transportation for and to inform Plaintiff whether those values exceeded Defendant's cargo insurance limits. Plaintiff's failure to do so, Defendant alleges, caused Defendant to accept shipments that exceeded Defendant's insurance coverage and Plaintiff is therefore liable for some or all of the damages arising from the cargo being underinsured.

"In general, courts have not imposed a legal duty on transportation brokers to hire carriers with specific insurance coverage." *KLS Air Express, Inc. v. Cheetah Transportation LLC*, Civ. No. 05-2593, 2007 WL 2428294, at *6 (E.D. Cal. Aug. 23, 2007). Indeed, in *Chubb Group of Insurance Companies v. H.A. Transportation Systems, Inc.*, 243 F. Supp. 2d 1064 (C.D. Cal. 2002), the district court held that a broker did not have a legal duty to hire a carrier with adequate insurance. *Id.* at 1072. As the district court went on to explain in *Chubb Group*, "to the extent courts have imposed this duty on brokers, the obligation arose from a contract; courts have not recognized a general tort duty to hire carriers with specified insurance coverage." *KLS Air Express*, 2007 WL 2428294, at *6 (citing *Chubb Group*, 243 F. Supp. 2d at 1072).

In light of the foregoing persuasive authorities, and the fact that Defendant does not claim that any duty to determine adequate insurance coverage arose from a contract (Def.'s Answer ¶ 28), the Court concludes that Defendant's affirmative defense of negligence

Page 15 - FINDINGS AND RECOMMENDATION

should be stricken.  As in *KLS Air Express*, this Court notes that
Defendant "cites no case law establishing or recognizing a duty on
the part of a broker to ensure that its carrier has adequate
insurance to cover potential losses or damages to the cargo.
Moreover, this Court has been unable to locate any cases that are
directly on point."  *KLS Air Express*, 2007 WL 2428294, at *6
(quoting *Chubb Group*, 243 F. Supp. 2d at 1072); *see also AIG Europe
Ltd. v. Gen. Sys., Inc.*, Civ. No. RDB-13-0216, 2013 WL 6654382, at
*3 n.7 (D. Md. Dec. 16, 2013) ("While [Defendant]'s second count
asserts a claim for negligence, [Defendant] failed to identify any
legal support for the proposition that a transportation broker has
a duty (above and beyond that created by the terms of the contract)
to inform the carrier of the value or content of the load or to
determine the extent of a carrier's insurance.").

Accordingly, the Court recommends granting Plaintiff's motion
to strike Defendant's affirmative defense of negligence.  *Cf.
Express*, 2007 WL 2428294, at *6 ("Because the law does not impose
a general duty on brokers to require carriers to hold adequate
insurance and plaintiff has no evidence that [defendant] undertook
such a specific duty in this case, the court grants defendant's
motion [for summary judgment] as to this claim.").

Plaintiff also moves to dismiss Defendant's counterclaim for
negligence on the similar grounds.  Defendant's counterclaim for
negligence incorporates paragraph twenty-eight of its negligence
affirmative defense by reference.  Paragraph twenty-eight alleges

> [t]hat plaintiff had a duty (arising out of the
> foreseeability of harm, industry practices, and/or a
> special relationship between plaintiff and defendant
> based on defendant's reliance on plaintiff) to learn the
> values of the shipments it had arranged for

Page 16 - FINDINGS AND RECOMMENDATION

1       transportation and to inform defendant that the values of
        the shipments exceeded defendant's cargo limits.
2

3  (Def.'s Answer ¶ 28.)   The remainder of Defendant's counterclaim

4  for negligence alleges that

5       Plaintiff negligently failed to inform defendant that the
        value of the shipments tendered to defendant on or about
6       [December 4, 2012,] exceeded the limits of defendant's
        cargo insurance.  That caused defendant to accept the
7       shipments without enough insurance to cover the
        subsequent loss, and plaintiff is responsible for the
8       underinsured portion of the loss.  Plaintiff should be
        liable to defendant for those damages claimed against
9       defendant arising from the cargo being underinsured.

10 (Def.'s Answer ¶ 29.)

11      In opposition to Plaintiff's motion to dismiss, Defendant

12 argues that,

13      [i]f [P]laintiff was arranging shipments for [Defendant]
        without checking the values of the load (or if it was
14      arranging loads when it knew that the value of the cargo
        exceeded [Defendant]'s cargo insurance limits), a fact
15      finder could decide that [Plaintiff] created a
        foreseeable risk of harm to [Defendant], namely that
16      [Defendant] would end up being underinsured on a cargo
        loss claim.
17

18 (Def.'s Resp. Mem. at 19).  Citing *KLS Air Express*, Defendant also

19 argues that "in at least one of the cases" relied on by Plaintiff

20 "the court held that the shipper could sue the broker *in negligence*

21 for the broker's failure to provide adequate insurance."  (Def.'s

22 Resp. Mem. at 20.)

23      The Court is not persuaded by Defendant's arguments.   As

24 referenced above, the *KLS Air Express* court granted summary

25 judgment on one of the two negligence claims asserted by the

26 shipper against the broker "[b]ecause the law does not impose a

27 general duty on brokers to require carriers to hold adequate

28 insurance and [the shipper] ha[d] no evidence that [the defendant]

Page 17 - FINDINGS AND RECOMMENDATION

undertook such a specific duty." As Defendant notes, however, the *KLS Air Express* court also denied summary judgment on a second negligence claim:

> In general, courts have held that a broker's duty to a shipper is limited to arranging for transportation with a reputable carrier. Defendant asserts it met this obligation in this case. However, in so arguing and proffering evidence of the same, defendant ignores plaintiff's precise theory of negligence liability; plaintiff contends defendant undertook the obligation to provide plaintiff with adequate insurance covering the shipment. Whether defendant, in fact, undertook such obligation is disputed, and thus, summary judgment is denied as to this claim.

*KLS Air Express*, 2007 WL 2428294, at *5 (internal citation omitted).

Contrary to Defendant's suggestion, this case is more akin to the negligence claim that was disposed of at the summary judgment stage by the *KLS Air Express* court because Defendant does not allege that Plaintiff specifically undertook a duty to ensure that the shipment did not exceed Defendant's cargo insurance limits. Rather, as Defendant states in its response brief, Plaintiff "knew or should have known the value of the cargo *(perhaps pursuant to some duty)*, but it failed to inform [Defendant] that it was being set up with an underinsured load[.]" (Def.'s Resp. Mem. at 16) (emphasis added). Moreover, each of the load confirmation contracts specifically states that Defendant agrees "to have its own liability and cargo insurance for *the* load" in question. (Am. Compl. ¶ 14; Def.'s Answer ¶ 14.) Yet, Defendant admits to picking up the shipments in two separate trailers at the Shipper's facility in Vancouver, Washington, combining the two cargo shipments into a single trailer in Portland, Oregon, and then failing to notify Plaintiff that it done so. (Def.'s Answer ¶¶ 5-6.) The theory

Page 18 - FINDINGS AND RECOMMENDATION

proffered by Defendant in support of its negligence counterclaim simply fails to meet the *Twombly/ Iqbal* facial plausibility standard.  It should therefore be dismissed.

**C.  "Fault of Others" Affirmative Defense**

Plaintiff also moves to strike Defendant's affirmative defense of "fault of others."  In its response brief, Defendant makes reference to the fact that it has considered bringing a third-party claim against Federal Express (i.e., the other party involved in the collision on Interstate 84 in Eastern Oregon) and then states that it does not intend to rely on the "fault of others" affirmative defense "unless something is learned in discovery." (Def.'s Resp. Mem. at 5.)

Because Defendant does not intend to rely on the "fault of others" affirmative defense, and because of the "distaste for using discovery for unknowing fishing expeditions," *Hohri v. United States*, 847 F.2d 779, 783 n.6 (Fed. Cir. 1988) (Baldwin, J., dissenting in part), the Court recommends granting Plaintiff's motion to strike this defense.  Defendant can file a motion to amend the pleadings in the event evidence is discovered that warrants such a defense, assuming such a motion is timely.

**D.  Breach of Contract Affirmative Defense**

Plaintiff also moves to strike Defendant's affirmative defense for breach of contract.  Defendant's affirmative defense for breach of contract is set forth at paragraph thirty-seven of Defendant's answer, wherein it alleges "[t]hat any alleged breach by defendant is excused by the breach of an implied contract term by arranging for defendant to transport shipments that exceeded defendant's

cargo insurance limits and/or by failing to comply with the implied covenant of good faith and fair dealing." (Def.'s Answer ¶ 37.)

It is well settled that "[a] court may strike an affirmative defense as 'insufficient as a matter of law' if, on the face of the pleadings, the defense is patently frivolous or clearly invalid." *Hancock Bank v. ORL, LLC*, 2012 WL 868942m at *4 (M.D. Fla. Mar. 14, 2012) (citation omitted); *see also Paleteria La Michoacana v. Productos Lacteos*, 905 F. Supp. 2d 189, 191 (D.D.C. 2012) (stating that "Rule 12(f) allows courts to strike truly baseless or spurious affirmative defenses.") (citation omitted); *Do It Best Corp. v. Heinen Hardware, LLC*, No. 1:13-CV-69, 2013 WL 3421924, at *2 (N.D. Ind. July 8, 2013) (stating that an affirmative defense may be stricken pursuant to Rule 12(f), if it fails to withstand a Rule 12(b)(6) challenge).

In light of the observations set forth *infra*, p. 18, line 12, through p. 19, line 3, the Court concludes that it is clear on the face of the pleadings that Defendant's affirmative defense for breach of contract, as pled in paragraph thirty-seven of the answer, is patently frivolous and/or clearly invalid. As such, the Court recommends striking Defendant's affirmative defense for breach of contract as "insufficient as a matter of law."

**E.    Subject Matter-Related Affirmative Defense**

Plaintiff next moves to strike Defendant's reliance on lack of subject matter jurisdiction as an affirmative defense. Specifically, Defendant alleges "[t]hat to the extent plaintiff's claims are based on breach of contract, rather than based on the Carmack Amendment, the Court lacks subject matter jurisdiction." (Def.'s Answer ¶ 35.) Essentially, Defendant challenges whether

Page 20 - FINDINGS AND RECOMMENDATION

1   this Court may exercise supplemental over the breach of contract

2   claim asserted by Plaintiff that is predicated on Defendant

3   allegedly combining certain unrelated cargo shipments prior to the

4   incident with the Shipper's vitamin and nutritional shipments.

5   (Def.'s Resp. Mem. at 11) ("[Plaintiff]'s newly brought breach of

6   contract claim essentially has nothing to do with its Carmack

7   Amendment claim.").

8       The supplemental jurisdiction statute provides that "district

9   courts shall have supplemental jurisdiction over all other claims

10  that are so related to claims in the action within such original

11  jurisdiction that they form part of the same case or controversy."

12  28 U.S.C. § 1367(a). "A state law claim is part of the same case

13  or controversy when it shares a 'common nucleus of operative fact'

14  with the federal claims and the state and federal claims would

15  normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969,

16  978 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers*

17  *Health & Welfare Trust v. Desert Valley Landscape Maint., Inc.*, 333

18  F.3d 923, 925 (9th Cir. 2003)). Claims arise from a common nucleus

19  of operative fact when they are "factually interdependent." *Myers*

20  *v. Richland Cnty.*, 429 F.3d 740, 746 (8th Cir. 2005) (quoting

21  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80

22  (1994)).

23      In this case, Plaintiff (as a broker standing in the shoes of

24  the Shipper) is bringing a Carmack Amendment against Defendant (the

25  motor carrier), and the Court clearly has federal question

26

27

28

Page 21 - FINDINGS AND RECOMMENDATION

jurisdiction over such a claim.[7]   Plaintiff (solely as a broker) is also bringing a breach of contract claim against Defendant (the motor carrier) that does not concern the transportation of the Shipper's vitamins and nutritional supplements.

Despite the fact that Plaintiff is wearing two hats, so to speak, all of the claims at issue in this proceeding seem to have a "common nucleus of operative fact" insofar as they concern Plaintiff's ongoing business relationship with Defendant, as well as the manner in which Defendant transported shipments arranged by Plaintiff in its capacity as a broker.   Moreover, the exercise of supplemental jurisdiction will surely promote the goals of efficiency and judicial economy, as all claims can and should be resolved in one lawsuit.   Accordingly, the Court recommends striking Defendant's affirmative defense of "subject matter jurisdiction," which challenges whether this Court should exercise supplemental jurisdiction over one of Plaintiff's breach of contract claims, on the grounds that it is baseless.

**F.   Condition Precedent-Related Affirmative Defense**

Plaintiff next moves to strike to the affirmative defense set forth in paragraph thirty-two of Defendant's answer.   Paragraph thirty-two is entitled "Failure to Perform Condition Precedent," and it alleges that "[t]hat [P]laintiff has failed to perform all condition precedent required for its claims and/or required under the applicable [November 29, 2010] contract, including, but not

---

[7] There is no dispute that Plaintiff paid the Shipper and received "a release and assignment of claim from [the Shipper]." (Def.'s Answer ¶ 9.)

Page 22 - FINDINGS AND RECOMMENDATION

1  limited to, submitting its claims to the Surface Transportation

2  Board." (Def.'s Answer ¶ 32.)

3      Plaintiff argues that filing "this claim *and lawsuit*" with the

4  STB would be an exercise in futility, relying on the deputy

5  director's response letter (which the Court declined to take

6  judicial notice of) as well as the authorities cited therein

7  regarding the STB's ability to entertain claims concerning damage

8  or loss of cargo. (Pl.'s Mem. Supp. at 10.)

9      The Court recommends denying Plaintiff's motion to strike

10 because Plaintiff fails to adequately address the futility of

11 filing its remaining claims with the STB (i.e., those that do not

12 concern claims for loss and damage to cargo). Indeed, Plaintiff

13 seems to suggest by this motion that this affirmative defense

14 should be stricken with respect to all of Plaintiff's claims.

15 Nothing in Plaintiff's argument suggests that the STB would not

16 consider those claims that do not relate to loss or damage of

17 cargo, such as the breach of contract claim predicated on Defendant

18 allegedly combining other unrelated shipments. Plaintiff's motion

19 should therefore be denied on this ground. To extent Plaintiff

20 asserts that Defendant waived this defense by failing to submit its

21 counterclaims to the STB, the Court declines to consider it here as

22 it was raised for the first time in the reply brief. *See Smith v.*

23 *Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

24 **G.   Indemnity-Related Affirmative Defense**

25     Lastly, Plaintiff moves to strike Defendant's affirmative

26 defense that contractual indemnity does not apply or is void, which

27 alleges

28

> [t]hat the contractual indemnity, defense, and hold harmless provisions relied on by plaintiff do not apply to plaintiff's contract claims or the assigned Carmack Amendment claims and/or do not permit plaintiff to be indemnified, defended, or held harmless for plaintiff's own fault. Furthermore, these provisions may be void in accordance with [Oregon Revised Statute §] 8[2]5.170.

(Def.'s Answer ¶ 31.) Plaintiff's argument in support of its motion to strike this affirmative defense, in its entirety, is:

> ORS 825.170 is a state statute that attempts to address the allocation of liability in transportation contracts, which obviously involves shipper[s], brokers and motor carriers. As such, it directly affects the 'price' and 'service' provided by both motor carriers and brokers. ORS 825.170 therefore falls directly within the scope of the [Federal Aviation Administration Authorization Act of 1994 or 'FAAAA'] and is preempted. Further, any other prohibition of this kind that is based [on] any other Oregon law, statutory, judicial or other, is preempted.
>
> As made clear by the Supreme Court in [*American Airlines v. Wolens*, 513 U.S. 219 (1995)], the contract(s) between [Plaintiff] and [Defendant] must be enforced as agreed, with nothing added or enhanced by virtue of state law.

(Pl.'s Mem. Supp. at 9.)

ORS § 825.170 provides:

> (1) Except as provided under subsections (2) and (3) of this section, any provision in a motor carrier transportation contract that requires either party or either party's surety or insurer to indemnify or hold harmless the other party against liability for death, personal injury or property damage caused in whole or in part by the negligence or intentional acts or omissions of the other party is void.
>
> (2) This section does not affect any provision in a motor carrier transportation contract that requires either party or either party's surety or insurer to indemnify another person against liability for death, personal injury or property damage that arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors.
>
> (3) This section does not apply to any Uniform Intermodal Interchange and Facilities Access Agreement administered by the Intermodal Association of North America or any other agreement providing for the interchange, use or

Page 24 - FINDINGS AND RECOMMENDATION

1    possession of intermodal chassis, intermodal containers
     or other intermodal equipment.
2

3    (4)   As   used   in   this   section,   'motor   carrier
     transportation contract' means any written agreement for:
4

5    (a)   The   transportation   of   personal   property   for
     compensation or hire;
6
     (b) Entry upon real property for the purpose of packing,
7    loading, unloading or transporting personal property for
     compensation or hire; or
8
     (c) A service incidental to an activity described in
9    paragraph (a) or (b) of this subsection including, but
     not limited to, storage of personal property for
     compensation or hire.

10   OR. REV. STAT. § 825.170.

11   The FAAAA preemption provision provides, in relevant part:

12   [A] State, political subdivision of a State, or political
     authority of 2 or more States may not enact or enforce a
13   law, regulation, or other provision having the force and
     effect of law related to a price, route, or service of
14   any motor carrier (other than a carrier affiliated with
     a direct air carrier . . . ) or any motor private
15   carrier, broker, or freight forwarder with respect to the
     transportation of property.
16

17   49 U.S.C. § 14501(c)(1).   Courts in the Ninth Circuit employ the

18   following three-step approach in order to determine whether §

19   14501(c)(1) preempts state laws and regulations:

20   First, [the court] must consider whether the provision
     relates to a price, route, or service of a motor carrier.
21   If the answer is no, the provision does not fall within
     the preemptive scope of § 14501(c)(1).   If the answer is
22   yes, we must consider whether the provision has the force
     and effect of law—that is, whether the provision was
23   enacted pursuant to the State's regulation of the market,
     rather than the State's participation in the market in a
24   proprietary capacity.   If the provision does not fall
     within the market participant doctrine and relates to
25   rates, routes, or services, [the court] turn[s] to the
     third inquiry and consider[s] whether any of the FAAA
26   Act's express exemptions save the regulation from
     preemption. . . . [For example,] [t]he FAAA Act does not
27   restrict the safety regulatory authority of a State with
     respect to motor vehicles.
28

Page 25 - FINDINGS AND RECOMMENDATION

1  *Villalpando v. Excel Direct Inc.,* No. 12-cv-04137, 2014 WL 1338297,
2  at *7 (N.D. Cal. Mar. 28, 2014) (citations, quotation marks,
3  brackets, and ellipses omitted).

4      The Court recommends denying Plaintiff's motion to strike this
5  affirmative defense for two reasons.  First, Plaintiff offers no
6  explanation as to why its preemption argument would warrant
7  striking the entire affirmative defense set forth in paragraph
8  thirty-one of Defendant's answer, as opposed to, for example, the
9  one sentence alleging that the indemnity provisions "may be void in
10  accordance with ORS 8[2]5.170."

11      Second, Plaintiff's briefing fails to adequately address the
12  three-step approach employed by the Ninth Circuit.  Instead,
13  Plaintiff merely states in a conclusory fashion that "ORS 825.170
14  is a state statute that attempts to address the allocation of
15  liability in transportation contracts . . . . As such, it directly
16  affects the 'price' and 'service' provided by both motor carriers
17  and brokers.  ORS 825.170 therefore falls directly within the scope
18  of FAAAA and is preempted."  This analysis, or lack thereof, is
19  insufficient in the Court's view and does not warrant granting a
20  motion to strike this defense.  Nothing in this decision precludes
21  a better supported argument by Plaintiff at the summary judgment
22  stage.

23                   **V. CONCLUSION**

24      For the reasons stated, Plaintiff's motion (Docket No. 46) to
25  dismiss Defendant's counterclaim for negligence and to strike
26  certain affirmative defenses should be granted in part and denied
27  in part.

28  ///

Page 26 - FINDINGS AND RECOMMENDATION

**VI. SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due **December 9, 2014.**  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due **December 26, 2014.**  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this  21st  day of November, 2014.

/s/ Dennis J. Hubel

_____
                DENNIS J. HUBEL
        United States Magistrate Judge

Page 27 - FINDINGS AND RECOMMENDATION