IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **COMPLETE DISTRIBUTION SERVICES, INC.**,<br><br>              Plaintiff,<br><br>       v.<br><br>**ALL STATES TRANSPORT, LLC**,<br><br>              Defendant. | Case No. 3:13-cv-00800-SI<br><br>**OPINION AND ORDER** |

John A. Anderson and Keven M. Anderson, ANDERSON & YAMADA, P.C., 9755 SW Barnes Road, Suite 675, Portland, OR 97225. Of Attorneys for Plaintiff.

Flavio A. Ortiz and Martin M. Rall, LACHENMEIER ENLOE RALL & ORTIZ, 9600 SW Capitol Highway, Suite 200, Portland, OR 97219. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

United States Magistrate Judge Dennis J. Hubel issued a Findings and Recommendation ("F&R") in this case on November 11, 2014.[1] Dkt. 65. Judge Hubel recommended that Plaintiff Complete Distribution Services, Inc.'s ("CDS") motion to dismiss certain counterclaims and motion to strike certain affirmative defenses (Dkt. 46) be granted in part. Specifically, Judge

---

[1] While this Court's review of Judge Hubel's F&R was pending, this case was transferred to the undersigned judge for all purposes.

PAGE 1 – OPINION AND ORDER

Hubel recommended that Defendant All States Transport, LLC's ("AST") counterclaim for negligence be dismissed; that AST's affirmative defenses of negligence, "fault of others," breach of contract, and lack of subject-matter jurisdiction be struck; and that AST's affirmative defenses of failure to perform a condition precedent and preemption of contractual indemnity not be struck.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."). Nor, however, does the Act "preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

AST timely filed an objection, Dkt. 67, to which CDS responded. Dkt. 68. AST objected to the portions of Judge Hubel's F&R regarding negligence, breach of contract, and subject-matter jurisdiction. The Court reviews the remainder of the F&R, to which no party has objected, for clear error on the face of the record. As no such error is apparent, the Court adopts the

PAGE 2 – OPINION AND ORDER

remainder of the F&R. The Court reviews *de novo* the portions of the F&R to which AST objects.

## BACKGROUND

AST is an interstate motor carrier registered with the Federal Motor Carrier Safety Administration.[2] CDS is a registered freight broker; it acts as a liaison between carriers and shippers[3] to arrange for transportation. 49 U.S.C. § 13102(2). In December 2012, CDS arranged for AST to transport two shipments of vitamins and nutritional supplements for Pacific Nutritional, Inc. ("PNI") from Vancouver, Washington, to two separate locations in Florida. On December 7, 2012, AST picked up the shipments. Without informing CDS or PNI, AST combined the two shipments into one trailer for transportation. The next day, December 8, 2012, AST's truck was involved in an accident on Interstate 84 in eastern Oregon, causing loss and damage to PNI's cargo.

The Carmack Amendment to the Interstate Commerce Act governs all claims between motor carriers and shippers concerning "delay, loss, failure to deliver and damage to property." *White v. Mayflower Transit, L.L.C.*, 543 F.3d 581, 584 (9th Cir. 2008); *see* § 14706. PNI filed a claim with CDS for $169,844.47 in loss and damage to its shipments, which CDS forwarded to AST and AST's insurer. Then, in exchange for an assignment of PNI's claims, CDS paid PNI the full amount.

On May 13, 2013, standing in the shoes of PNI under the Carmack Amendment, CDS filed suit against AST for freight loss and damage. CDS also brought claims for indemnity and

---

[2] Under federal law regulating the trucking industry, an entity that "provid[es] motor vehicle transportation for compensation" is a "motor carrier." 49 U.S.C. § 13102(14).

[3] A "shipper" is an entity that "owns the goods being transported." 49 U.S.C. § 13102(13).

setoff under its contracts with AST. On January 23, 2014, CDS amended its complaint to add an additional contract claim, alleging 89 other occasions on which AST had combined shipments in violation of its agreements with CDS. On February 10, 2014, AST filed its answer, including certain affirmative defenses and counterclaims. On February 24, CDS moved to dismiss AST's counterclaim for negligence under Federal Rule of Civil Procedure 12(b)(6) and to strike some of AST's affirmative defenses under Rule 12(f).

## STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only when the pleading states no cognizable legal theory or contains insufficient factual allegations to support a claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a pleading's factual allegations, the court must draw all reasonable inferences in favor of the non-moving party and accept all well-pleaded material facts as true. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Legal conclusions couched as factual allegations, however, are not entitled to that presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The plaintiff "may not simply recite the elements of a cause of action, but must [provide] sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Furthermore, the underlying factual allegations must "*plausibly* suggest an entitlement to relief." *Baca*, 652 F.3d at 1216 (emphasis added). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### B. Motion to Strike

A court may strike an affirmative defense under Federal Rule of Procedure 12(f) if it presents an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial" matter in a pleading is content that "'has no essential or important relationship to the claim for relief or the defenses being pleaded.'" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (2d ed. 1990)), *rev'd on other grounds*, 510 U.S. 517 (1994). "Impertinent" matter is that which "do[es] not pertain, and [is] not necessary, to the issues in question." *Id.* A pleading is legally insufficient "only if it clearly lacks merit under any set of facts the defendant might allege." *Polk v. Legal Recovery Law Offices*, 291 F.R.D. 485, 489 (S.D. Cal. 2013) (quotation marks omitted).

The purpose of a motion to strike is to avoid spending time and money litigating spurious issues. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). The disposition of a motion to strike is within the discretion of the district court, but such motions "are disfavored and infrequently granted." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008); *see also Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990) (disposition of a motion to strike is within the district court's discretion); *Capella Photonics, Inc. v. Cisco Sys., Inc.*, --- F. Supp. 3d ----, 2014 WL 8097683, at *4 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." (quotation marks and alteration omitted)). A Rule 12(f) motion will not "be granted if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the issue by drawing inferences from acts and

statements that are not disputed." 5C Charles A. Wright, *et al.*, *Federal Practice & Procedure* § 1381 (3d ed. 2014).

## DISCUSSION

AST objects to the portions of the F&R striking its negligence defense and dismissing its negligence counterclaim; striking its breach-of-contract defense; and striking its subject-matter jurisdiction defense. The Court addresses each issue in turn.

**A. Negligence**

AST alleged that CDS was negligent both as an affirmative defense and as a counterclaim. On AST's theory, CDS had a duty to inform AST of the value of the cargo it was contracting to transport; by failing to do so, AST contends, CDS is liable for the resulting loss. Judge Hubel, reasoning that CDS had no such duty, struck the defense and dismissed the counterclaim.

AST now objects that Judge Hubel based his decision on inapposite authority: the cases cited in the F&R, AST argues, stand only for the proposition that brokers have no duty to hire a carrier with sufficient insurance coverage to cover the cargo. *See KLS Air Express, Inc. v. Cheetah Transp. LLC*, 2007 WL 2428294, at *6 (E.D. Cal. 2007); *Chubb Grp. of Ins. Cos. v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1072 (C.D. Cal. 2002). AST maintains that it advances a different, narrower proposition: that brokers have a duty merely to inform carriers of the value of the cargo. AST argues that imposing such a duty on brokers would permit carriers to make informed decisions about obtaining supplemental coverage, declining a load, or limiting their exposure to high-value loads in some other way; and, moreover, that brokers routinely perform this duty as a matter of industry practice.

The Court adopts the reasoning and the conclusion of the F&R. As Judge Hubel recognized, *KLS Air* and *Chubb Group* may not be direct precedent in this case, but they are

PAGE 6 – OPINION AND ORDER

relevant and persuasive for the proposition that the duties imposed on brokers are limited and few. *See KLS Air Express*, 2007 WL 2428294, at *5 ("In general, courts have held that a broker's duty to a shipper is limited to arranging for transportation with a reputable carrier."). And although AST is not a shipper but a carrier, AST too "cites no caselaw establishing or recognizing" the duty it seeks to impose on the broker. *See Chubb Grp.*, 243 F. Supp. 2d at 1072. Nor are AST's reasons for imposing such a duty persuasive: A carrier seeking to limit its liability may ascertain the value of a load itself, either by asking the broker or by asking the shipper directly. If a carrier accepts a load without so doing, it may not later shift to the broker the responsibility for an underinsured loss.

For these reasons, the Court declines to impose on brokers a duty to inform carriers of the value of a load. *See AIG Europe Ltd. v. Gen. Sys., Inc.*, 2013 WL 6654382, at *3 n.7 (D. Md. 2013). AST's negligence defense thus clearly lacks merit and must be struck; similarly, its negligence counterclaim does not plausibly suggest an entitlement to relief and must be dismissed.[4]

---

[4] The Court requested supplemental briefing from the parties on whether AST's counterclaim is also barred by Oregon's economic-loss doctrine, which provides that "one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property." *Hale v. Groce*, 304 Or. 281, 284 (1987). To recover in negligence for a purely economic loss, a plaintiff must show a "special relationship or [some other] status that imposed a duty on the defendant beyond the common-law negligence standard." *Harris v. Suniga*, 344 Or. 301, 308 (2008). "Such a duty arises only in attorney–client, architect–client, agent–principal, and similar relationships where the professional owes a duty of care to further the economic interests of the 'client.'" *Roberts v. Fearey*, 162 Or. App. 546, 549-50 (1999).

Here, CDS is undisputedly a freight broker, and a freight broker is defined under federal law as "a person . . . that *as a principal or agent sells*, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102 (emphasis added). The statute is unclear whether brokers act as agents for carriers, shippers, or both. The Court accordingly declines to decide whether the economic-loss doctrine would bar AST's counterclaim and resolves the issue on the grounds stated above.

PAGE 7 – OPINION AND ORDER

## B. Breach of Contract

AST argues that CDS also had a *contract* duty, pursuant to an implied contractual term or the implied duty of good faith and fair dealing, to inform AST of the value of the load it was contracting to carry. AST alleges that CDS breached this duty, thereby excusing any alleged breach of contract by AST. The F&R recommended that this defense be struck for the same reason as the negligence defense. But whether a duty exists in contract is independent of whether the same duty exists in tort.

Oregon law provides that "every contract contains an implied duty of good faith and fair dealing." *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1033 (D. Or. 2012) (citing *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010)). The implied duty "does not operate in a vacuum, [but rather] focuses on the agreed common purpose and the justified expectations of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." *Klamath Off-Project*, 237 Or. App. at 445 (quotation marks and alteration omitted). The implied duty of good faith can incorporate a duty to conform to industry standards and practices when performing contract obligations, if that is what the parties to the contract reasonably expected. *See Iron Horse Eng'g Co. v. Nw. Rubber Extruders, Inc.*, 193 Or. App. 402, 420-21 (2004). At the same time, "the duty of good faith cannot serve to contradict an express contractual term." *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 645 (1995) (en banc).

Here, AST alleges that as a matter of industry practice, brokers routinely inform carriers of the value of loads they are carrying. Moreover, AST alleges that its course of dealing with CDS supports such a duty because CDS maintained the relationship with the shipper and limited AST's contact with the shipper. *Cf. Iron Horse*, 193 Or. App. at 421 (reading industry practices into a contract because of the parties' course of dealing). CDS argues that the express terms of

PAGE 8 – OPINION AND ORDER

Case 3:13-cv-00800-SI    Document 76    Filed 03/25/15    Page 9 of 11

the contracts under which it and AST operated contradict an implied duty to inform AST of the value of the cargo beforehand, but fails to identify a term disclaiming or contradicting such a duty. Instead, CDS supplies several terms indicating that AST expressly accepted full liability for all loss and damage to cargo. But the bar for striking an affirmative defense is high—a pleading must "clearly lack[] merit under any set of facts the defendant might allege." *Polk*, 291 F.R.D. at 489 (quotation marks omitted). Therefore, that showing is insufficient for CDS to prevail on its motion to strike this defense. The resolution of this defense must await summary judgment or trial.

### C. Subject-Matter Jurisdiction

District courts have supplemental jurisdiction over state-law claims that "form part of the same case or controversy" as a claim within the court's original jurisdiction. 28 U.S.C. § 1367(a). Two claims form part of the same case or controversy when they share a "common nucleus of operative fact" or are "factually interdependent." *See Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (quotation marks omitted); *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 966 (9th Cir. 2014). A court may decline to exercise the supplemental jurisdiction provided by § 1367(a) under certain circumstances enumerated in § 1367(c). In so doing, however, the court must analyze whether declining supplemental jurisdiction "most sensibly accommodat[es] the values of economy, convenience, fairness and comity." *Bahrampour*, 356 F.3d at 978 (quotation marks and alteration omitted).

No party has filed a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. In its answer to CDS's amended complaint, however, AST asserted that the Court lacked supplemental jurisdiction over CDS's contract claims. CDS moved to strike that assertion. In the ensuing briefing, the parties fully litigated the issue of the Court's supplemental jurisdiction. Accordingly, the Court addresses the issue as though such a motion had been filed.

PAGE 9 – OPINION AND ORDER

*Cf.* Fed. R. Civ. P. 12(h)(3) (permitting the district court to dismiss for lack of subject-matter jurisdiction "at any time").

CDS's Carmack Amendment claim, which relates to the loss and damage to PNI's cargo on December 8, 2012, "aris[es] under" federal law and therefore falls within this Court's original federal-question jurisdiction. *See* 28 U.S.C. § 1331. CDS's second and third claims arise from the contracts pursuant to which AST was transporting that cargo. The latter claims concern the same events as the Carmack Amendment claim, and their resolution will involve much of the same evidence and witnesses. Those claims are therefore factually interdependent with the Carmack Amendment claim and fall within the Court's supplemental jurisdiction under § 1367(a).

CDS's fourth claim, also for breach of contract, alleges 89 *other* instances in which AST combined multiple loads in alleged violation of its contract obligations. CDS argues that because this claim involves conduct similar to that alleged in its first two contract claims, it will involve similar witnesses and evidence and that the Court therefore has supplemental jurisdiction. But the Court may exercise supplemental jurisdiction only over a claim that is "[sufficiently] related to claims in the action within [the Court's] *original* jurisdiction." § 1367(a) (emphasis added). CDS's first two contract claims are within the Court's *supplemental* jurisdiction, not its original jurisdiction.

The only claim in this action over which the Court has original jurisdiction is the Carmack Amendment claim. That claim, however, is a strict-liability claim; whether or not AST combined loads is irrelevant. *See Mo. Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964) ("[T]he shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages."). Moreover, the Carmack

PAGE 10 – OPINION AND ORDER

Amendment claim belongs to the shipper; CDS merely stands in the shipper's shoes by assignment. Its contracts with AST are therefore also not relevant to that claim. There is therefore no common nucleus of operative fact between the loss and damage to *this* shipment and alleged contract breaches relating to *other* shipments. Accordingly, CDS's fourth claim does not fall within the Court's supplemental jurisdiction.

## CONCLUSION

As supplemented in this opinion, the Court ADOPTS IN PART the Findings and Recommendation, Dkt. 65, except for Parts IV.D and IV.E. CDS's motion to dismiss AST's counterclaim for negligence and to strike certain affirmative defenses (Dkt. 46) is GRANTED IN PART and DENIED IN PART. AST's counterclaim for negligence is DISMISSED. AST's affirmative defenses of negligence and fault of others are STRICKEN. CDS's fourth claim for relief is DISMISSED.

**IT IS SO ORDERED**.

DATED this 25th day of March, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
